**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerry Dean SUTT, a/k/a J. D. King,**
**Defendant-Appellant.**

**No. 16948.**

United States Court of Appeals
Seventh Circuit.

Aug. 25, 1969.

As Modified on Denial of Rehearing
Oct. 14, 1969.

Edwin A. Strugala, Chicago, Ill., Jerry Dean Sutt, pro se, for defendant-appellant.

Richard E. Eagleton, U. S. Atty., Herman C. Runge, Jr., Springfield, Ill., for plaintiff-appellee.

Before KILEY, SWYGERT and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

Defendant appeals from a conviction by a jury of violating the Dyer Act, 18 U.S.C. § 2313. We affirm.

Some time during the day on August 9, 1967, Patricia Bray's dark green 1966 Volkswagen was stolen in St. Louis, Missouri. At the time it bore Serial No. 116671548, Engine No. FO625273, and California license plates. Defendant Sutt was arrested in Illinois later in the month and was subsequently indicted in Count 1 for transporting the Volkswagen from Missouri to Illinois, knowing that it had been stolen, 18 U.S.C. § 2312; and in Count 2 with sale, possession or receipt of the motor vehicle in Illinois, knowing that it had been stolen, 18 U.S. C. § 2313. The jury found defendant not guilty on Count 1, and guilty on Count 2.

The evidence favorable to the government is substantially: The night the car was stolen Sutt called Clark, the government's principal witness, and offered to sell him some parts of a Volkswagen, and when Clark expressed interest in purchasing parts, Sutt offered to sell the complete Volkswagen which he said he got from a cousin in California.

Clark agreed to buy the "clip"[1] which was delivered the next day and was of a dark green color. Some time after this, government witness Hinnen saw an "engine out of a small car * * * like a Volkswagen" in his back yard. Later Sutt told Hinnen that he planned to move the engine from Hinnen's back yard. Hinnen had previously seen Sutt driving a Volkswagen, "green or blue," bearing California license plates. Government witness Miller, after Sutt had used his garage, found a Volkswagen transmission in the garage, and noticed that his hacksaw was missing. He also saw Sutt driving a car pulling a trailer containing a dark green "clip." The "clip," when delivered to Clark, bore marks of a hacksaw, presumably used to dismantle the Volkswagen.

We think that upon this circumstantial evidence the jury could find beyond a reasonable doubt, under the court's instruction defining "motor vehicle," that Sutt was guilty of possession of a motor vehicle in Illinois, knowing that it had been stolen in Missouri.

There is nothing physically impossible or inherently improbable in Clark's testimony which would empower us to hold that the government failed as a matter of law to prove Sutt guilty beyond a reasonable doubt. We find evidence in the record which would justify the jury in finding that the government sustained its burden of proving beyond a reasonable doubt all elements of the offense charged.

■ Sutt requests us to consider, under the plain error rule,[2] the alleged error in the district court's admission of hearsay testimony with respect to a stolen Volkswagen ring operating in the St. Louis, Missouri-Granite City, Illinois area. We see no reversible error in the admission of the testimony complained of. What is claimed to be prejudicial was evoked during the cross-examination of government witness Wheeler. Although some of the testimony may have been irresponsive to the questions asked, there was no motion to strike irresponsive parts. Furthermore, there was cross-examination of other government witnesses about a stolen automobile ring investigation.

■ Sutt contends that we should summarily reverse his conviction because of the introduction into evidence of statements given by him to FBI agents rendered involuntary because he was in custody at the time he gave them and he had not been given the warnings required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

He made the first statement on September 14, 1967, while in police custody in Madison, Illinois. It is conceded no warnings were given. He denied having any knowledge of stolen automobiles, said he hàd owned only one Volkswagen engine in his life, and that that engine came from a 1955 Volkswagen he had bought in St. Louis. He showed the agent a receipt indicating the purchase in 1965 of the 1955 Volkswagen. Later, on October 26, 1967, Sutt was arrested in Madison, Illinois, and without being given *Miranda* warnings told the same agent that the Volkswagen motor which he had delivered under Clark's purchase direction and which had been in the Hinnen yard came from a 1955 Volkswagen and again showed the agent a purchase receipt.

On November 7, 1967, defendant, in custody, was given the *Miranda* warnings, signed a waiver form with respect to his rights, and told the same agent the motor in the Hinnen yard came from a green 1966 Volkswagen, carrying California license plates, stolen from St. Louis, and was the one delivered by him to St. Louis at Clark's direction. He also told the agent that Clark and others were framing him by accusing him of stealing Volkswagens in the St. Louis

---

1. The "clip" refers to the top and back of a Volkswagen.

2. Rule 52(b), Fed.R.Crim.P.

**1308**

area. In this statement he accused Clark of stealing the Bray Volkswagen in St. Louis, saying that he had merely driven Clark to St. Louis from Madison and then driven Clark's car back to Madison. He told the agent too that the day after the theft, Clark sold him the engine for $20.00 and two weeks later Clark paid him $40.00 to buy back the motor and directed him to deliver the engine in St. Louis.

Sutt claims that the first two in-custody statements, while exculpatory, were incriminating circumstances exhibiting consciousness of guilt. He relies upon this court's opinion in United States v. Riso, 405 F.2d 134 (7th Cir.1969). In that case no *Miranda* question was involved. The court merely approved an instruction that untrue exculpatory statements could be considered as circumstantial evidence of consciousness of guilt. Even assuming the two statements *do exhibit consciousness of guilt*— and were statements which, had *Miranda* warnings been given and had Sutt requested counsel, were not likely to have been made—we decline to reverse. We are satisfied beyond a reasonable doubt on this record that if the statements were not in evidence the jury would still have rendered the verdict of guilty. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude that no constitutional error affecting Sutts' substantial rights was committed at the trial. Id.

We see no relationship between the first two exculpatory statements and the final incriminating statement so as to warrant our application of our decision in Myers v. Frye, 401 F.2d 18 (7th Cir. 1968). That was *habeas corpus* and we remanded for an evidentiary hearing on the question of voluntariness of Myers' confession to murder. We recognize that the burden of proving voluntariness is on the government, but the statement vital, in our opinion, to incriminate Sutt

was the final statement which is clearly voluntary.

We have passed upon all questions raised on this appeal. The judgment is affirmed.