**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Antonio Marin DE LA CRUZ, Rafaela Munoz Taguas, and Catalina Munoz Taguas, Defendants-Appellants.**

**Nos. 17105–17107.**

United States Court of Appeals
Seventh Circuit.

Jan. 15, 1970.

---

Patrick J. Hughes, Jr., Joseph E. McHugh, Daniel A. Becco, Walter H. Moses, Jr., Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty. John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, KILEY, Circuit Judge, and GORDON, District Judge.

GORDON, District Judge.[1]

The three defendants were tried jointly before a jury on narcotics charges. Each was convicted of violating 21 U.S.C. § 174 by concealing and transporting heroin. They were also convicted of conspiring to import heroin into the United States.

■ At the trial, the defendants contended that they had no knowledge that the smuggled substance was heroin. Such knowledge is an element of the offenses charged.

The appellants have raised several assignments of error, but we find it necessary to discuss only one of them. We have examined the others and believe they do not constitute prejudicial error.

The error which we consider to be sufficiently serious to require a new trial involves certain expressions and admissions which Mr. De La Cruz allegedly made in response to questions during a customs search before being warned of his constitutional rights.

Some time before the defendants arrived in Chicago, customs agents at O'Hare Airport had received eight pictures with a list of names of persons under suspicion of smuggling heroin.

[1]. The writer of this opinion is sitting by designation from the district court for the Eastern District of Wisconsin.

Among these eight pictures were those of the three defendants; their names were on the list.

When the defendants arrived at O'Hare Airport, a customs officer recognized them. A routine check of their baggage revealed no contraband. Then a customs officer asked for their passports and directed them into a separate room. In that room, the defendants' luggage was re-examined, but no drugs were found.

Agents Kline and Bowers and investigators Smith and Wolken then separated Mr. De La Cruz from the two female defendants and took him into another room. There Agent Kline put his hand under Mr. De La Cruz's coat and, upon feeling a large bulge under his clothes, asked him in Spanish what he had. Mr. De La Cruz responded "Chemicals".

Agent Kline testified that he next asked Mr. De La Cruz "Drogas?" and that Mr. De La Cruz nodded affirmatively. "Drogas" is the Spanish word for "drugs". Agent Kline further testified that he then asked in Spanish "The other women, too?", and that Mr. De La Cruz again nodded affirmatively.

After this questioning, Agent Kline left to get someone who spoke Spanish fluently. Mr. Kline returned with an interpreter who then advised Mr. De La Cruz of his rights and also informed him that he was under arrest. Officers photographed Mr. De La Cruz with and without his clothing; women agents in the adjoining room similarly warned the other defendants of their rights, arrested them, and photographed them with and without their clothing.

At the trial, testimony about the events and conversations described above were admitted into evidence over the defendants' objections. The defendants contend that the alleged admissions of Mr. De La Cruz made while he was in the interrogation room and before he was warned of his rights, were not admissible under Miranda v. Arizona, 384 U.S.

436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The prosecution disagrees, arguing that the Miranda warnings were not required because this was a customs search, and that Mr. De La Cruz was not under restraint or in custody.

■ We believe it is clear that Miranda warnings are unnecessary in a routine customs search. As the court noted in Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct 280, 285, 69 L.Ed. 543 (1925):

"Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

Such detention and questioning as ordinarily occur in the context of routine customs inspection are accepted as a standard burden of international travel. Indeed, most travelers would be greatly surprised at being given the Miranda warnings in a generalized customs search since they sense neither physical restraint nor any coercive atmosphere. Such a generalized customs search is properly excluded from the warning requirements of Miranda as an "inquiry of persons not under restraint" or as a "general on-the-scene questioning".

■ However, we are convinced that the questioning involved in the case at bar did not take place during a routine or generalized customs search. The finger of suspicion was pointed squarely at these three defendants after they were identified at the airport. Mr. De La Cruz was questioned after he was found to be concealing suspicious materials. The basic purpose of the Miranda warning is to eliminate what the Supreme Court, in that case, 384 U.S. at page 467, 86 S.Ct. at page 1624, called the

" * * * inherently compelling pressures which work to undermine the individual's will to resist and to com-

pel him to speak where he would not otherwise do so freely."

In the case at bar, the defendants were taken into an interrogation room where they were subjected to a close examination by four agents. One was separated from the others, "frisked", and specially questioned. All of the defendants were poorly educated; none spoke the language of this country or the language of the agents who were interrogating and searching them. Under the circumstances, we believe that the defendants were restrained in a custodial interrogation; that suspicion of guilt had focused upon them; and that the atmosphere of the interrogation was coercive within the concept of *Miranda*.

■ The government contends that the admission into evidence of the alleged admissions by Mr. De La Cruz was not prejudicial. It argues that beyond a reasonable doubt the jury would have convicted the defendants without considering such alleged admissions. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Sutt, 415 F.2d 1305 (7th Cir. 1969); United States v. Broadhead, 413 F.2d 1351 (7th Cir. 1969). Under the circumstances of this case, we disagree. The record does not enable us to say that beyond a reasonable doubt the jury would have returned the same verdict had the evidence not been admitted.

The principal defense in this case consisted of the defendants' assertion that they did not know that the substance which they were transporting was heroin. The admission by Mr. De La Cruz to Agent Kline that he was concealing "drogas" about his waist went to the essence of the defense and cannot be treated as harmless error; its impact upon the jurors could well have been crucial.

The conviction of the appellants is reversed, and their cases are remanded for a new trial.